AUSA: Ashley C. Nicolas

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 393

UNITED STATES OF AMERICA

v.

CHRISTEN CHEN,
   a/k/a "Nauti,"
SHAQOYA HALL,
   a/k/a "Q," and
ZACHARY HAMPTON,
   a/k/a "J,"

        Defendants.

## COMPLAINT

Violations of 18 U.S.C. §§ 371,
922(a)(1)(A), 924(n), and 2

COUNTY OF OFFENSE:
NEW YORK and BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

   WILLIAM DOOLEY, being duly sworn, deposes and says that he is a Task Force Officer with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Unlicensed Business of Firearms Dealing)

   1.  Between in or about September 2023 up to and to and including the present, in the Southern District of New York and elsewhere, CHRISTEN CHEN, a/k/a "Nauti," ZACHARY HAMPTON, a/k/a "J," and SHAQOYA HALL, a/k/a "Q," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, engaging in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A).

   2.  It was a part and an object of the conspiracy that CHRISTEN CHEN, a/k/a "Nauti," ZACHARY HAMPTON, a/k/a "J," and SHAQOYA HALL, a/k/a "Q," the defendants, and others known and unknown, not being licensed importers, licensed manufacturers, and

licensed dealers of firearms within the meaning of Chapter 44, Title 18, United States Code, willfully and knowingly engaged in the business of importing, manufacturing, and dealing in firearms, and in the course of such business shipped, transported, and received firearms in interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A).

Overt Acts

3.      In furtherance of the conspiracy and to effect the illegal object thereof, CHRISTEN CHEN, a/k/a "Nauti," ZACHARY HAMPTON, a/k/a "J," and SHAQOYA HALL, a/k/a "Q," the defendants, together, and with others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about September 27, 2023,   CHEN sent a text message to a confidential informant (the "CI") which included the itinerary of a co-conspirator ("CC-1") who was expected to travel from Atlanta, Georgia to New York, New York to deliver firearms to the CI.

b.   On or about October 16, 2023, HAMPTON, HALL, and CHEN met the CI in Staten Island and sold the CI one firearm for approximately $1,000.

c.   On or about October 30, 2023, CHEN and HALL met the CI in Staten Island and sold the CI four firearms for approximately $5,000.

d.   On or about January 26, 2024, HALL traveled from Atlanta, Georgia, to New York, New York to deliver six firearms to the CI.

e.   On or about January 29, 2024, HALL received at least two firearms from an unidentified co-conspirator  who traveled from Bronx, New York to New York, New York to transfer the firearms to HALL.

f.   On or about January 30, 2024, HALL and HAMPTON were present at a

hotel in New York, New York where they expected to meet the CI in order to sell the CI eight firearms for approximately $13,500.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Firearms Trafficking)

4.     Between in or about September 2023 up to and including the present, in the Southern District of New York and elsewhere, CHRISTEN CHEN, a/k/a "Nauti," ZACHARY HAMPTON, a/k/a "J," and SHAQOYA HALL, a/k/a "Q," not being licensed importers, licensed manufacturers, and licensed dealers of firearms within the meaning of Chapter 44, Title 18, United States Code, willfully and knowingly engaged in the business of importing, manufacturing, and dealing in firearms, and in the course of such business shipped, transported, and received a firearm in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1) to wit, the defendants worked together to purchase and otherwise obtain firearms in, among other places, Georgia for resale in, among other places, New York.

(Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1), and 2.)

## COUNT THREE
### (Interstate Travel with Intent to Engage in Firearms Trafficking)

5.     Between in or about September 2023 up to an including the present,  in the Southern District of New York and elsewhere, CHRISTEN CHEN, a/k/a "Nauti," and SHAQOYA HALL, a/k/a "Q," the defendants, with the intent to engage in conduct that constitutes a violation of section 922(a)(1)(A), traveled from one state into another state, and acquired and attempted to acquire, firearms, to wit, CHEN and HALL traveled between New York and Georgia, for the purpose of acquiring firearms in Georgia, with the intent that the firearms be resold in New York.

(Title 18, United States Code, Sections 922(n) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

## Overview

6.      Based on my involvement in the investigation, I have learned that, in or about September 2023, ZACHARY HAMPTON, a/k/a "J," the defendant, introduced a confidential informant (the "CI") to CHRISTEN CHEN, a/k/a "Nauti" in order to facilitate the sale of firearms from CHEN to the CI (the "Gun Trafficking Scheme"). Over the course of the Gun Trafficking Scheme, CHEN worked with SHAQOYA HALL, a/k/a "Q," the defendant, to obtain firearms in southern states — primarily Georgia — that were then transported and resold in New York, New York. As discussed in further detail below, between September 2023 and January 24, 2024, CHEN, HAMPTON, and HALL discussed the sale of at least forty firearms and did, in fact, sell thirteen firearms to the CI.

## HAMPTON Introduces the CI to CHEN

7.      Based on my participation in this investigation, including my conversations with the CI[1] as well as my review of reports and surveillance video, I have learned, among other things, the following:

   a. On or about September 22, 2023, ZACHARY HAMPTON, a/k/a "J," the defendant, spoke to his cousin, the CI, and offered, in sum and substance, to connect the CI to his (HAMPTON's) gun supplier. HAMPTON provided the CI with a phone number (the "Phone Number") for the supplier who was later identified as CHRISTEN CHEN, a/k/a "Nauti."  HAMPTON explained to the CI, in sum and substance, that the "gun plug" (CHEN) resided in Staten Island but could get a firearm from a supplier in Georgia for approximately $850.

---

[1] The CI is a paid confidential source who has been providing information to law enforcement in exchange for monetary compensation since approximately 2018. Information provided by the CI has been reliable and has been corroborated by, among other things, surveillance video, law enforcement surveillance, and phone records.

b.   The same day, on or about September 22, 2023, the CI began communicating with an individual later identified as CHRISTEN CHEN, a/k/a "Nauti," the defendant, over an end-to-end encrypted application via the Phone Number. That is, CHEN was the individual HAMPTON referred to as his "gun plug." During their first conversation, the CI asked CHEN for a "pic of that jawn" — in this context, slang for firearm — and tried to confirm that the firearm would cost "8 flat." CHEN responded "850 Gang . . . I gotta buy food Shit 50 for the box" and then sent a photograph of a handgun. Based on my training and experience, I recognize "jawn" as a slang term for a firearm and "food" as a slang term for ammunition. That is, CHEN was communicating that he would sell the firearm with a box of ammunition for $850.

c.   On or about September 26, 2023, CHEN and the CI continued discussing a firearms deal including by discussing the method of payment as well as timing. CHEN told the CI, in sum and substance, that he was trying to get his female co-conspirator to travel that night to deliver the firearm. On or about September 27, 2023, CHEN sent the CI a photograph of a bus itinerary showing travel from Atlanta to New York, New York.

**The CI's First Gun Purchase**

8.      Based on my participation in this investigation, including my conversations with the CI, I have learned, among other things, that on or about October 14, 2023, CHRISTEN CHEN, a/k/a "Nauti," the defendant,  sent a photograph to the CI, depicting three firearms and inquired, in sum and substance, if the CI was interested in purchasing the guns. CHEN then clarified, in sum and substance, that he only had a revolver and Taurus G2C available for sale. The

CI responded, in sum and substance, that he was not interested in purchasing the revolver but did want to buy the Taurus G2C.

9.     Based on my involvement in the investigation, including my participation in surveillance and my review of reports prepared by an HSI Special Agent who spoke with the CI, I have learned among other things, the following:

a.  On or about October 16, 2023, at approximately 12:15 p.m., the CI met ZACHARY HAMPTON, a/k/a "J," the defendant, in the vicinity of HAMPTON's residence in Staten Island. The CI and HAMPTON then walked towards a bodega (the "Bodega") located on Castleton Avenue in Staten Island where they met up with CHRISTEN CHEN, a/k/a "Nauti," and SHAQOYA HALL, a/k/a "Q," the defendants. HAMPTON then told the CI and CHEN, in sum and substance, to go into the Bodega to complete the sale.

b.  At HAMPTON's direction, the CI, CHEN, HALL, and HAMPTON entered the Bodega where CHEN produced a firearm which he previously had concealed on his person. CHEN showed the firearm to the CI. And in response, the CI  handed CHEN approximately $1,000. CHEN gave the firearm to the CI and proceeded to count the money while HALL handed the CI at least five rounds of 9mm ammunition.

c. After the firearms transaction was complete, the CI transferred the firearm to law enforcement officers who have identified the firearm as a Taurus G2C which is consistent with (i) the type of firearm that the CI and CHEN had previously discussed, and (ii) the firearm depicted in the photograph CHEN sent to the CI on or about October 14, 2023, as depicted below.

 

**The CI's Second Gun Purchase**

10.     Based on my participation in this investigation, including my conversations with the CI, I have learned, among other things, the following:

a. On or about October 22, 2023, CHRISTEN CHEN, a/k/a "Nauti," the defendant, sent the CI photographs of two firearms. CHEN then told the CI, in sum and substance, that CHEN's co-conspirator was working on obtaining a Glock. CHEN also told the CI, in sum and substance, that CHEN had sold a revolver but believed that he had three more firearms on the way to New York.

b. On or about October 26, 2023, CHEN told the CI, in sum and substace, that CHEN had a co-conspirator in "dah A" with additional firearms and sent the CI a photograph depicting five firearms (below left). CHEN further explained, in sum and substance, that the Glock handguns in the photograph would cost $1200 each. Based on my training and experience including my involvement in this investigation, I understand that, during this conversation, CHEN was discussing with the CI additional firearms that CHEN had available for purchase. I further understand "dah A" to be a reference to Atlanta, Georgia. CHEN then sent the CI a photograph of six additional firearms.

 

    c.  On or about October 30, 2023, at approximately 1:28 p.m., the CI met CHEN and

SHAQOYA HALL, a/k/a "Q," the defendant, in Staten Island to purchase the

firearms. CHEN handed the CI a black bag, which the CI understood to contain the

firearms. The CI then handed CHEN a stack of cash totaling approximately $5,000.

CHEN then provided HALL with a portion of the cash which had been provided by

the CI. After the sale, the CI transferred the black bag to law enforcement officers.

Law enforcement officers recovered from the bag four firearms wrapped in a white

t-shirt. A photograph of the seized firearms is copied below:



11.    Based on my review of text messages exchanged between the CI and

CHRISTEN CHEN, a/k/a "Nauti," the defendant, I have learned, among other things, that on or

about October 31, 2023, CHEN contacted the CI and informed the CI, in sum and substance, that

he was planning on "[g]oiin [b]ack [t]o [t]he A." Based on his relationship with CHEN, the CI

understood that CHEN was communicating his intent to travel to Atlanta to let the CI know he

could purchase more firearms.

**CHEN's Travel Between New York and Georgia**

12.     Based on my involvement in the investigation, I have learned that, on or about November 14, 2023, the Honorable Robert W. Lehrburger, United States Magistrate Judge, Southern District of New York, authorized a warrant and order (the "Cellsite Warrant") for prospective location information associated with a phone associated with CHRISTEN CHEN, a/k/a "Nauti," the defendant, (the "Phone Number"). Based on the returns from the Cellsite Warrant, I have learned, among other things, the following about CHEN's movements, based on the location of the cellphone assigned the Phone Number:

   a.  On or about November 15, 2023, CHEN, traveled from New York to North Carolina.

   b.  On or about November 28, 2023, CHEN traveled from Charlotte, North Carolina to Atlanta, Georgia. Between November 28, 2023 and December 28, 2023, CHEN made approximately seven trips between Atlanta and North Carolina.

   c.  On or about January 22, 2024, CHEN traveled from North Carolina to New York. CHEN returned to Atlanta, Georgia on or about January 23, 2024. On or about January 28, 2024, CHEN returned to New York, New York.

**CHEN Discusses Additional Gun Sales with the CI**

13.     Based on my review of text messages exchanged between the CI and CHRISTEN CHEN, a/k/a "Nauti," the defendant, as well my review of text messages between the CI and ZACHARY HAMPTON, a/k/a "J," and my conversations with the CI, I have learned, among other things, the following:

   a.  In or about November 2023, HAMPTON began directly communicating with the CI, offering to sell him firearms directly.

b.  On or about November 20, 2023, while CHEN was in Charlotte, North Carolina, CHEN sent the below photograph to the CI and told the CI, in sum and substance, that he had an AR style pistol for sale for "1300" and offered to sell the firearm with, in sum and substance, five magazines and a "muzzle."



c.  On or about December 9, 2023, CHEN informed the CI, in sum and substance, that he had sold the AR style pistol discussed *supra* ¶ 7(b).

d.  On or about December 29, 2023, CHEN sent the CI several photographs of firearms available for sale including eight handguns and a semiautomatic rifle. Photographs of one of the handguns (with an extended magazine inserted) and the semiautomatic rifle are included below.

 

e.   On or about January 7, 2024, CHEN sent the CI a series of photographs depicting nine firearms that were available for purchase. CHEN told the CI, in sum and substance, that he could purchase all of the firearms for approximately $9,000. CHEN and the CI discussed, in sum and substance, possible prices as well as the potential for the CI to travel to Atlanta to pick up the guns. As depicted on the below left, CHEN sent a photograph of four firearms and offered, in sum and substance, to sell the CI seven firearms for "9bandz" with a $2,600 deposit. Based on my training and experience, I understand "9bandz" to mean $9,000. Finally, on the below far right, CHEN sent an additional three photographs depicting at least three more guns, including one handgun that had an extended magazine inserted in the magazine well.




**HAMPTON and HALL Sale**

14.    Based on my review of text messages between the CI and ZACHARY HAMPTON, a/k/a "J," the defendant, as well as my participation in surveillance and my conversations with the CI, I have learned, among other things, that:

   a.  On or about January 28, 2024, HAMPTON sent the CI a text message that contained a screenshot of a text message sent from SHAQOYA HALL, a/k/a "Q," the defendant, to HAMPTON containing a picture of six firearms that would be included in the planned sale of a total of eight guns.

   b.  On or about January 29, 2024, HAMPTON and the CI exchanged text messages in which they negotiated the CI's purchase of eight firearms for approximately $13,500.

   c.  On or about January 30, 2024, the CI and HAMPTON exchanged text messages in which they discussed the logistics of the contemplated sale of eight firearms and agreed, in sum and substance, to meet at a hotel located in New York, New York (the "Hotel").

   d.  On or about January 30, 2024, at approximately 1:20 p.m., law enforcement officers conducting surveillance at the Hotel observed HAMPTON standing outside the Hotel while HALL stood in the lobby of the Hotel carrying two backpacks.

   e.  Upon identifying HAMPTON and HALL, law enforcement officers approached HAMPTON and HALL and placed them under arrest and seized the backpacks in HALL's possession. One of the backpacks was found to contain a total of eight firearms wrapped in t-shirts. A photograph of the seized firearms is copied below.



15.     Based on my participation in the arrest of SHAQOYA HALL, a/k/a "Q,"
the defendant, I have learned, among other things, that, as described *supra* ¶ 14(e), law
enforcement officers arrested HALL in connection with her participation in the attempted sale of
eight firearms to the CI on or about January 30, 2024. After her arrest, HALL was transported to
an HSI facility in New York, New York where she was advised of her *Miranda* rights. After being
advised of her rights, HALL agreed to talk to investigators. During the Interview, HALL said,
among other things, the following:

a.  In or about summer 2023, HALL and CHEN traveled via car from Atlanta, Georgia
    to New York, New York while in possession of four firearms that they intended to
    sell in New York.

b.  On or about January 26, 2024, HALL traveled from Atlanta, Georgia to New York,
    New York via bus while in possession of six firearms that she intended to sell in
    New York, New York.

c.  At some point between on or about January 26, 2024 and on or about January 30,
    2024, HALL received two additional firearms from an unidentified co-conspirator
    who traveled from the Bronx, New York to New York, New York to transfer the
    firearms to HALL.

16.     Based on my conversation with an ATF Agent who consulted an ATF database, I know that CHRISTEN CHEN, a/k/a "Nauti," ZACHARY HAMPTON, a/k/a "J," and SHAQOYA HALL, a/k/a "Q," the defendants, do not have licenses to import, manufacture, deal in, or collect firearms.

WHEREFORE, I respectfully request that CHRISTEN CHEN, a/k/a "Nauti," SHAQOYA HALL, a/k/a "Q," and ZACHARY HAMPTON, a/k/a "J", the defendants, be imprisoned or bailed, as the case may be.


_____
WILLIAM DOOLEY
Task Force Officer, HSI


Sworn to before me by
reliable electronic means
this 31st day of January 2024


_____
THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York